**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

THE SCRANTON TIMES, L.P. and THE
TIMES PARTNER, LLC,

      Plaintiffs,

            v.

WILKES-BARRE PUBLISHING
COMPANY d/b/a/ THE TIMES
LEADER,

      Defendant.

CIVIL ACTION No. 3:08-cv-2135

(JUDGE CAPUTO)

## <u>MEMORANDUM</u>

Now before the Court is the Plaintiffs' Motion to Remand (Doc. 4).  For the reasons detailed below, the Court will deny this motion.

The Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331, 1338 and 1367.

## BACKGROUND

Plaintiffs, the Scranton Times, L.P, and the Times Partner, LLC, own and publish a daily newspaper in Scranton, Pennsylvania.  (Compl., Doc 1, Ex. 7  ¶¶ 1-4) Defendant, the Wilkes-Barre Publishing Company, is the owner and publisher of a daily newspaper in Wilkes-Barre, Pennsylvania.  (*Id.* ¶ 7.)  On October 27, 2008 Defendant began publication of a "Scranton Edition" of it's daily newspaper.  (*Id.* ¶ 9.)  The Defendant's Scranton Edition contained obituaries that Plaintiffs allege were copied from their newspapers and/or websites.  (*Id.* ¶ 11.)  According to Plaintiffs, this plagiarism of obituaries continued until October 31, 2008.  (*Id.* ¶ 11.)  On November 5, 2008, Plaintiffs filed a complaint in the Court

of Common Pleas of Lackawanna County stating claims for misappropriation, unfair competition, conversion, fraud, breach of contract, tortious interference with existing business relations, and unjust enrichment. On November 14, 2008, the Defendant removed the matter to this Court. (Notice of Removal, Doc. 1.) On December 4, 2008, Plaintiffs, alleging that this Court does not have jurisdiction over the claims contained in its Complaint, filed a Motion to Remand the case to the Pennsylvania Court of Common Pleas. (Doc. 4.) Plaintiffs filed a supporting brief (Doc. 5) with their motion, and Defendant filed a brief in opposition (Doc. 8) on December 8, 2008. Plaintiffs did not file a reply to Defendant's brief. Accordingly, the current motion has been completely briefed by the parties and is ripe for disposition.

**DISCUSSION**

In the their motion to remand, Plaintiffs state that they do not have a claim for copyright infringement. (Mot. to Remand ¶ 3.) Moreover, they argue that because they have presented no claims under any federal law and there is no other basis for federal jurisdiction,[1] the case must be remanded back to the state court. (*Id.* ¶¶ 9, 11.) In response, the Defendant argues that the claims asserted by Plaintiffs fall squarely within the subject matter of the Copyright Act, 17 U.S.C. § 102, *et seq.*. If Plaintiffs' complaint does, in fact, assert claims covered by the Copyright Act, then federal court jurisdiction over Plaintiffs claims pursuant to 28 U.S.C. §§ 1331 and 1338 is appropriate.

In their supporting brief, Plaintiffs state that they "make no claim for copyright

---

[1] The Court notes that all of the parties to the current action are entities situated in and established under the laws of the Commonwealth of Pennsylvania. The Court, accordingly, has no separate basis of subject matter jurisdiction due to the parties' "diversity of citizenship" as conferred by 28 U.S.C. § 1332.

infringement in this case" and that this Court "lacks jurisdiction and the case must be remanded to state court." (Pls.' Br. in Supp., Doc. 5, at 5.) However, "[a] state claim which is 'really one of federal law' may be removed to federal court because 'it is an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint.'" *Goepel v. National Postal Mail Handlers Union*, 36 F.3d 306, 310 (3d Cir. 1994) (quoting *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 22 (1983)). "The Supreme Court has held that a state cause of action is 'really' a federal cause of action which may be removed to federal court if the "federal cause of action completely preempts . . . the state cause of action.'" *Id*. (quoting *Franchise Tax Bd.*, 463 U.S. at 24). "This principle is 'known as the complete preemption doctrine, and it is 'a distinct concept from ordinary preemption.'" *Id*. (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987); *Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie R. Co.*, 858 F.2d 936, 941 (3d Cir. 1988)).

"[T]he complete preemption doctrine applies only if 'the statute relied upon by the defendant as preemptive contains civil enforcement provisions within the scope of which the plaintiff's state claim falls.'" *Id*. at 311 (quoting *Railway Labor*, 858 F.2d at 942). Section 504 of the Copyright Act, entitled "Remedies for infringement: Damages and profits," contains an enforcement provision for the type of claims Plaintiff brings in the current case. 17 U.S.C. § 504.

The "second prerequisite for the application fo the complete preemption doctrine [is]: 'a clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law.'" *Goepel*, 36 F.3d at 311 (quoting *Railway Labor*, 858 F.2d

at 942). Specifically applying this test to cases involving potential copyright disputes, other district courts have stated that "a state law cause of action is preempted by federal copyright law if (1) the subject matter of the claim falls within the subject matter of copyright law, and (2) the asserted state law right is "equivalent" to any of the exclusive rights specified by [the Copyright Act]." *Daley v. Firetree, Ltd.*, No. 4:CV-04-2213, 2006 U.S. Dist. LEXIS 4061, at *5 (M.D.Pa. Jan. 19, 2006) (McClure, J.).

In their supporting brief, the Plaintiffs extensively quote, cite, and summarize a single case, *International News Service v. The Associated Press*, 248 U.S. 215 (1918), as the sole support for the proposition that the subject matter of their claims does not involve the Copyright Act. The *International News Service* case involved a similar factual scenario where the International New Service was accused of distributing and selling news that was taken from early editions of Associated Press publications. The Supreme Court held that this practice supported a claim for unfair competition but that it did not implicate copyright issues. *Id.* at 234-235. However, in 1976, fifty-eight (58) years after the Supreme Court's *International News Service* decision, Congress amended the Copyright Act, eliminating the dual state and federal copyright systems existing at the time of *International News Service* and expressly preempting state copyright laws. 17 U.S.C. § 301(a).

Since the 1976 Congressional amendments, federal courts have held that several causes of action were preempted by the Copyright Act. In *National Basketball Association v. Motorola, Inc.*, 105 F.3d 841 (2d Cir. 1997), a case cited in Defendant's brief, the Second Circuit Court of Appeals addressed a case where the National Basketball Association ("NBA") brought two (2) state law unfair competition claims along with four (4) claims

brought pursuant to federal statutes, including one (1) claim of federal copyright infringement, against a manufacturer of pager devices used to broadcast and receive real-time data and statistics for in-progress NBA games. In its analysis, the court stated that "basketball games do not fall within the subject matter of federal copyright protection because they do not constitute 'original works of authorship' under 17 U.S.C. § 102(a)." *Id.* at 846. Even though the court determined that the underlying material at issue was not copyrightable, the court further noted that "[c]opyrightable material often contains uncopyrightable elements within it, but Section 301 preemption bars state law misappropriation claims with respect to uncopyrightable as well as copyrightable elements." *Id.* at 849. "Under the general scope requirement, Section 301 'preempts only those state law rights that may be abridged by an act which, in and of itself, would infringe one of the exclusive rights' provided by federal copyright law.'" *Id.* at 850 (quoting *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992)). Accordingly, the court stated the appropriate "general scope" test:

> But if an "extra element" is "required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie within the general scope of copyright, and there is no preemption."

*Id.* (quoting *Computer Assoc. Int'l*, 982 F.2d at 716).

Courts within this District have employed a similar test adopted by the First Circuit Court of Appeals in *Data Genaral Corporation v. Grumman Systems Support Corporation*, 36 F.3d 1147 (1st Cir. 1994). "In Data General, the First Circuit held that 'if a state cause of action requires an extra element, beyond mere copying, preparation of derivative works, performance, distribution or display, then the state cause of action is qualitatively different

from, and not subsumed within, a copyright infringement claim and federal law will not preempt the state action.'" *Daley*, 2006 U.S. Dist. LEXIS 4061, at *6-7 (M.D. Pa. Jan. 19, 2006) (quoting *Data General*, 36 F.3d at 1164). "To determine whether a claim is qualitatively different, we look at what the plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced." *Id.* at *7 (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004)). "Not every extra element is sufficient to establish a qualitative variance between rights protected by federal copyright law and that by state law." *Id.* (quoting *Dun & Bradstreet Software Services., Inc. v. Grace Consulting*, 307 F.3d 197, 218 (3d Cir. 2002)). "Indeed, courts have taken a 'restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim.'" *Id.* (quoting *Briarpatch*, 373 F.3d at 306).

The Court will now examine each of Plaintiffs' state law claims to determine whether these claims contain an extra element that renders them qualitatively different from a copyright infringement claim under the Copyright Act.

## I.    Plaintiffs' Count I Misappropriation Claim

The Plaintiffs in this case represent that they have based their claims on the Supreme Court's decision in *International News Service*. (Pls.' Br. in Supp. at 1.) Accordingly, this case shares many similarities with the case presented to the Second Circuit Court of Appeals in *National Basketball Association v. Motorola*, where a plaintiff also brought a misappropriation claim largely modeled on the *International News Service* case. In *NBA* the Court of Appeals noted that "[c]ourts are generally agreed that some form of

such a claim survives preemption." *National Basketball Association*, 105 F.3d at 850 (citing

*Financial Information, Inc. v. Moody's Investors Service, Inc.,* 808 F.2d 204, 208 (2d Cir.

1986), *cert. denied*, 484 U.S. 820, 98 L. Ed. 2d 42, 108 S. Ct. 79 (1987)).  After reviewing

the *International News Service* case, legislative history, and other interpretive decisions

from within the Second Circuit, the court concluded that "only a narrow [*International News

Service*] 'hot news' misappropriation claim survives preemption for actions concerning

material within the realm of copyright."  *Id.* at 852.  The *NBA* court further identified the

elements central to an *International News Service* claim as

> (i) the plaintiff generates or collects information at some cost or expense; (ii)
> the value of the information is highly time-sensitive; (iii) the defendant's use of
> the information constitutes free-riding on the plaintiff's costly efforts to generate
> or collect it; (iv) the defendant's use of the information is in direct competition
> with a product or service offered by the plaintiff; (v) the ability of other parties
> to free-ride on the efforts of the plaintiff would so reduce the incentive to
> produce the product or service that its existence or quality would be
> substantially threatened.

*Id.* (citations omitted).  After further interpretive analysis of the *International News Service*

decision, the Second Circuit Court of Appeals identified the extra elements allowing a

misappropriation claim styled upon *International News Service* to survive preemption as "(i)

the time-sensitive value of factual information, (ii) the free-riding by a defendant, and (iii) the

threat to the very existence of the product or service provided by the plaintiff."  *Id*. at 853.

This Court agrees with the Second Circuit Court of Appeals' analysis in *NBA*, and now

considers Plaintiffs' Count I misappropriation claim (Compl., Doc. ¶¶ 41-46) with respect to

the three identified "extra elements" allowing such claims to survive preemption.

    First, the obituaries appearing in Plaintiffs' publications convey information about

many time-sensitive details, including the time and place of funeral or memorial services.

7

Accordingly, the Court believes that the subject matter of the underlying material clearly satisfies the first "time-sensitive" extra element.

Likewise, the Court believes that the allegations contained in Plaintiffs' Complaint–namely, that Defendant, during a five (5) day period in October 2008, simply copied the death notices found in Plaintiffs' publications into its own newspaper–satisfies the second "free-riding" element. Even though Plaintiffs acknowledge that these obituaries were written and provided to Plaintiffs by local funeral homes, it was due to the Plaintiffs' efforts that these obituaries were collected, formatted, and distributed to the public. Thus, even though Plaintiffs were not responsible for producing the content found in each of these obituaries, Plaintiffs bore all of the costs of collecting and distributing this news-worthy information. If the allegations in Plaintiffs' Complaint are proven accurate, then Defendants enjoyed the benefit of Plaintiffs' labors without bearing any of the costs incurred by Plaintiffs. This is the very definition of free-riding.

The Court, however, finds that the Defendant's alleged copying and re-use of obituaries originally found in Plaintiffs' publications did not pose a threat to the existence of Plaintiffs' publications or the ability of those publications to continue the timely publication of obituaries. Each of the Counts brought in Plaintiffs' Complaint states that the alleged activities of the Defendant have resulted in a loss of customers and newspaper sales while also causing harm to Plaintiffs' existing business relations, profits, and good will. (Compl. ¶ 46.) This statement is accompanied by a prayer for relief requesting damages for Plaintiffs' losses resulting from the alleged activity. (*Id.*) The Court acknowledges that these statements certainly allege that the Defendant caused Plaintiffs some actual loss during the five (5) day period of alleged plagiarism activity, along with speculative future

losses in terms of goodwill, customer loyalty, and business relationships.  The Court does not, however, find that Plaintiffs have alleged that Defendant's activities have threatened the existence of their publications or has compromised or provided reduced incentive for Plaintiffs to continue collecting obituaries and printing them for public distribution.  Since the Plaintiffs' Complaint does not allege that Defendant's activities have threatened Plaintiffs' ability to provide the service of collecting and distributing obituaries to Plaintiffs' customers, the Court finds that Plaintiffs' Count I misappropriation claim does not contain any extra elements from a claim of copyright infringement and the claim is, accordingly, preempted by the Copyright Act.

## II.    Plaintiffs' Count II Unfair Competition Claim

Plaintiffs allege that Defendant's conduct of misappropriating Plaintiffs' obituaries and passing them off as its own in order to sell newspapers constitutes unfair competition.  This claim is similar to one of the claims at issue in the *Daley* case discussed above. Furthermore, as was the case in *Daley*, the Court believes that the Plaintiffs' Complaint mis-characterizes Defendant's behavior as "passing off" rather than the appropriate label of "reverse passing off."  As the *Daley* court noted, '[t]he distinction is critical because unfair competition claims alleging "reverse passing off" are preempted by the Copyright Act, while claims alleging "passing off" are not.  *Daley*, 2006 U.S. Dist. LEXIS 4061, at *8.  As the *Daley* court explained,

> Passing off (or palming off, as it is sometimes called) occurs when a producer misrepresents his own goods or services as someone else's.  In other words, "passing off" occurs when"A" sells "A's" product under "B's" name.  A state law unfair competition claim alleging the tort of "passing off" is not preempted, because it does not entail the assertion of rights equivalent to those protected by federal copyright law.

9

*Id.* at *9 (citations omitted).   In comparison, "a wrongdoer commits the tort of 'reverse passing off' when 'the producer misrepresents someone else's goods or services as his own.' That is, 'A' copies 'B's' work without permission and claims it as 'A's' own.'" *Id.* (quoting *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 n.1 (2003)).

In the current case, the Defendant's alleged conduct is best characterized as "reverse passing off" as Plaintiffs' Complaint alleges that Defendant has copied obituaries contained in Plaintiffs' publications and has distributed these obituaries in Defendant's newspaper as their own work.  The Court, thus, finds that, although Plaintiffs do not claim to hold a copyright over the obituaries at issue in this case, the rights that Plaintiffs seek to enforce through their Complaint are identical to those rights found in section 106 of the Copyright Act.   *See* 17 U.S.C. § 106 (granting the exclusive right for the owner of a copyright to reproduce and distribute copyrighted works).  The Court does not believe that Plaintiffs should, by denying the existence of a copyright over the material in question while, at the same time, claiming a property interest in that material, be able to deny Defendants from accessing a federal forum in an instance when the applicable subject matter and principles to be applied are of an identical nature to claims brought pursuant to the Copyright Act.  Thus, mindful of "what the plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced," *Daley*, 2006 U.S. Dist. LEXIS 4061 at *15 (quoting *Briarpatch*, 373 F.3d at 306), the Court finds that the state law cause of action falls within the subject matter of copyright law and is equivalent to many of the exclusive rights conferred by 17 U.S.C. § 106.  Accordingly, under the two-part test that courts have derived from 17 U.S.C. § 301, Plaintiffs' unfair competition claim (Count

II) is preempted by the Copyright Act.  *See Id.* at *5 ("a state law cause of action is preempted by federal copyright law if (1) the subject matter of the claim falls within the subject matter of copyright law, and (2) the asserted state law right is 'equivalent' to any of the exclusive rights specified by 17 U.S.C. § 106").

### III.    Plaintiffs' Count III Conversion Claim

In Count III of their Complaint, Plaintiffs bring a claim for conversion,  claiming that they owned the fifty (50) obituaries allegedly copied and reproduced by Defendant, and that the Defendant, aware of Plaintiffs' ownership, obtained and used these obituaries for its own financial gain. (Compl. ¶¶ 51-53.)  In order to correctly analyze the possible preemption of this claim, the Court must determine if the elements required to prove Plaintiffs' conversion claim exceed the elements required to bring a claim under the Copyright Act.

"Conversion is a tort by which the defendant deprives the plaintiff of his right to a chattel or interferes with the plaintiff's use or possession of a chattel without the plaintiff's consent and without lawful justification." *Pittsburgh Construction Co. V. Griffith*, 834 A.2d 572, 581 (Pa. Super. 2003).  "A plaintiff has a cause of action in conversion if he or she had actual or constructive possession of a chattel at the time of the alleged conversion." *Id.*  In comparison, an infringement claim under the Copyright Act requires a plaintiff to show  "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361 (1991).  Thus, the elements of conversion, notably the "deprivation" requirement, exceed the elements for a claim under the Copyright Act and Plaintiffs' Count III claims are not preempted.

11

### IV.    Plaintiffs' Count IV Fraud Claim

Plaintiffs allege in Count IV of their Complaint that when the Defendants allegedly copied obituaries from Plaintiffs' publications and websites, the Defendants falsely conveyed to the public and to funeral homes in Lackawanna County that certain funeral homes were doing business with the Defendant.  (Compl. ¶ 57.)

"[T]o establish common law fraud, a plaintiff must prove: (1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damage to the party defrauded as a proximate result."  Colaizzi v. Beck, 895 A.2d 36, 39 (Pa.Super. 2006). These elements are clearly in excess of the elements for claims brought under the Copyright Act, and the Court finds that Plaintiffs' Count IV fraud claim is not preempted in this case.

### V.    Plaintiffs' Count V Breach of Contract Claim

In Count V of their Complaint, Plaintiffs allege that the Defendant gained access to the purportedly plagiarized obituaries through a website maintained by the Plaintiffs. (Compl. ¶ 63.)  According to Plaintiffs the Defendant agreed to abide by certain Terms of Use when accessing Plaintiffs' website and that the alleged plagiarism was a direct violation and unlawful breach of this agreement.  (Id. ¶¶ 64-66.)

To state a claim for breach of contract, Plaintiffs "must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations."  Hunter v. Sterling Bank, No. 08-879, 2008 U.S. Dist. LEXIS 93429, at *6 (E.D. Pa. Nov. 14, 2008) (quoting Frederico

*v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007)).  Since these elements may clearly be characterized as "extra elements" that are not necessary for claims brought under the Copyright Act, Plaintiffs' Count V claim for breach of contract is not preempted.

> **VI.    Plaintiffs' Count VI Tortious Interference with Existing Business Relations Claim**

In Count VI of their Complaint, Plaintiffs allege that the Defendant "acted with the intent of interfering with and disrupting Plaintiffs' business relationships with. . . funeral home directors. . . by misappropriating Plaintiffs' work product, the obituaries, and then publishing them in The Times Leader (Scranton Edition) despite no request to do so by the funeral homes, the families of decedents or The Scranton Times."  (Compl. ¶ 70.)  As a result, Plaintiffs state that they "have suffered and. . . will continue to suffer injury to [their] business relationships."  (*Id.* ¶ 71.)  Thus, Plaintiffs, once again, complain that the Defendant has copied and distributed Plaintiffs' work product.  As previously detailed in this memorandum's discussion of Plaintiffs' Count II unfair competition claim, *supra*, and as stated by the court in *Daley*, "copying and distributing are exclusive rights of the owner of a copyright under [17 U.S.C. § 106]."  *Daley*, 2006 U.S. Dist. LEXIS 4061, at *16.  The allegations in Plaintiffs' Complaint essentially state that the Defendants' unauthorized reproduction and distribution of obituaries originally appearing in Plaintiffs' newspaper interferes with the Plaintiffs' ability to enjoy the contractual and business relations benefits arising out of Plaintiffs exclusive distribution of these obituaries.  "Such a claim is preempted by federal law."  *Id.* at *17-18; *see also* 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyrights § 1.01[B][1][a] ("Insofar as unauthorized reproduction, distribution, performance

or display causes the plaintiff to lose the benefits that would flow from an actual or prospective contract whereby plaintiff would authorize any such acts, the rights created by the tort of contract interference do not appear to differ qualitatively from rights under copyright ….").

### VII.    Plaintiffs' Count VII Unjust Enrichment Claim

Count VII of Plaintiffs' Complaint states that "[a]s a result of the aforementioned conduct of plagiarizing Plaintiffs' obituaries and publishing them in Defendant's newspapers, Defendant has become unjustly enriched at Plaintiffs' expense." (Compl. ¶ 77.) Thus, Plaintiffs, once again, complain that the Defendant has copied and distributed Plaintiffs' work product to the detriment of Plaintiffs, and for the reasons already articulated in this memorandum's discussion of Plaintiffs' Count II unfair competition and Count VI tortious interference claims, the Court finds that this claim is preempted by the Copyright Act.

### CONCLUSION

While they have brought claims that make no mention of federal copyright laws or any other federal laws, Plaintiffs "may not defeat removal by omitting to plead necessary federal questions" in their Complaint. *Franchise Tax Board*, 463 U.S. at 22. Applying the "extra element" method of preemption analysis used by numerous district and circuit courts, the Court has determined that the state law claims in Counts I, II, VI and VII of Plaintiffs' Complaint are within the general scope of the Copyright Act of 1976, 17 U.S.C. § 102, *et seq.*, and are, thus, preempted by federal law. In contrast, the state law claims in Counts III, IV, and V of Plaintiffs' Complaint, are outside the general scope of the Copyright Act, are not preempted by federal law. For this reason, the Court has subject matter jurisdiction over

Counts I, II, VI and VII of Plaintiffs' Complaint under the "federal question" jurisdiction conferred by 28 U.S.C. § 1331 and the jurisdiction over claims under the copyright, patent and trademark laws conferred by 28 U.S.C. § 1338.  The Court also has supplemental jurisdiction over the non-preempted state law claims in Counts III, IV, and V of Plaintiffs' Complaint under 28 U.S.C. § 1367.  For these reasons, Plaintiffs' Motion to Remand (Doc. 4) will be denied.

An appropriate order follows.


 March 6, 2009                                /s/ A. Richard Caputo
Date                                       A. Richard Caputo
                                           United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE SCRANTON TIMES, L.P. and THE TIMES PARTNER, LLC, | CIVIL ACTION No. 3:08-cv-2135 |
| Plaintiffs, | (JUDGE CAPUTO) |
| v. | |
| WILKES-BARRE PUBLISHING COMPANY d/b/a/ THE TIMES LEADER, | |
| Defendant. | |

### ORDER

Now, this   6th   day of March, 2009, it is **HEREBY ORDERED** that Plaintiffs'

Motion to Remand (Doc. 4) is **DENIED**.


 /s/ A. Richard Caputo
A. Richard Caputo
United States District Judge