# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE SCRANTON TIMES, L.P. and THE TIMES PARTNER, LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>WILKES-BARRE PUBLISHING COMPANY d/b/a/ THE TIMES LEADER,<br><br>    Defendant. | CIVIL ACTION No. 3:08-cv-2135<br><br>(JUDGE CAPUTO) |

## **MEMORANDUM**

Now before the Court is the Defendant's Motion for Judgment on the Pleadings. For the reasons detailed below, the Court will grant this motion in part and deny this motion in part.

The Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331, 1338 and 1367.

## **BACKGROUND**

Plaintiffs, the Scranton Times, L.P, and the Times Partner, LLC, own and publish a daily newspaper in Scranton, Pennsylvania. (Compl., Doc 1, Ex. 7 ¶¶ 1-4) Defendant, the Wilkes-Barre Publishing Company, is the owner and publisher of a daily newspaper in Wilkes-Barre, Pennsylvania. (*Id.* ¶ 7.) On October 27, 2008 Defendant began publication of a "Scranton Edition" of it's daily newspaper. (*Id.* ¶ 9.) The Defendant's Scranton Edition contained obituaries that Plaintiffs allege were copied from their newspapers and/or websites. (*Id.* ¶ 11.) According to Plaintiffs, this plagiarism of obituaries continued until

October 31, 2008. (*Id.* ¶ 11.) On November 5, 2008, Plaintiffs filed a complaint in the Court of Common Pleas of Lackawanna County stating claims for misappropriation, unfair competition, conversion, fraud, breach of contract, tortious interference with existing business relations, and unjust enrichment. On November 14, 2008, the Defendant removed the matter to this Court. (Notice of Removal, Doc. 1.) On December 4, 2008, Plaintiffs filed a Motion to Remand the case to the Pennsylvania Court of Common Pleas. (Doc. 4.) This Court denied the motion to remand, ruling that the Court has subject matter jurisdiction over this case because counts I, II, VI, and VII are within the scope of the Copyright Act of 1976, and, therefore, preempted by federal law. (Doc. 16). The Court also exercised supplement jurisdiction over claims III, IV, and V, which are not preempted by federal law.

Defendant filed an Answer on December 4, 2008, denying that it had copied the obituaries, but rather had obtained them from Legacy.com, Inc. ("Legacy.com"). (Answer, Doc. 7., ¶ 11). According to the Defendant, Legacy.com had separate agreements with both Plaintiffs and Defendant that assigned all rights, title, and interest in the obituaries to Legacy.com. (*Id.*) Furthermore, Defendant contends that the Terms of Use Agreement with Legacy.com grants any "Affiliate Newspapers" (i.e. newspapers with an agreement with Legacy.com) a royalty-free, perpetual, irrevocable, non-exclusive license to publish any and all material that is provided to Legacy.com. (*Id.*) Defendant denied all counts in the complaint and responded with affirmative defenses, arguing that 1) Plaintiffs' claims all fall within the subject matter of the Copyright Act of 1976, 2) Plaintiffs' claims are preempted by the Copyright Act of 1976, 3) Plaintiffs has assigned all right, title and interest in the obituaries to Legacy.com, 4) Plaintiffs lack standing to bring the suit because it has conveyed its right to sue to Legacy.com 5) both Plaintiffs and Defendant are Affiliate

2

Newspapers of Legacy.com, and thus each has a right to publish material from the Legacy.com website pursuant to Legacy.com's Terms of Use Agreement, and 6) Plaintiffs have failed to assert any claim on which relief could be granted. (*Id.*).

On December 10, 2008, Defendant filed a Motion for Judgment on the Pleadings and a brief in support of the motion, claiming that Plaintiffs' claims are preempted by the Copyright Act of 1976, the Plaintiffs lack standing to sue, and Plaintiffs cannot assert a claim under the Copyright Act. (Docs. 10-11). On December 24, 2008, Plaintiff filed its reply brief. (Doc. 12). On December 29, 2008, Plaintiff filed its Brief in Opposition to the Motion for Judgment on the Pleadings. (Doc. 13). Defendant filed its reply to the Brief in Opposition on January 9, 2009. (Doc. 14). Accordingly, the current motion has been completely briefed by the parties and is ripe for disposition.

## LEGAL STANDARD

Under Rule 12(c) of the Federal Rules of Civil Procedure, after the pleadings are closed, any party may move for judgment on the pleadings. A Rule 12(c) motion is designed to provide a means for disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice. *See* CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1367. A court should only grant a motion for judgment on the pleadings if it is clear that the merits of the controversy can be fully and fairly decided in this summary manner. *See id.* at § 1369.

In deciding a motion for judgment on the pleadings, a court must consider the

facts alleged in the pleadings and the inferences drawn from these facts in the light most favorable to the nonmoving party. *See Oxford Assocs. v. Waste Sys. Auth. of E. Montgomery County,* 271 F.3d 140, 144-45 (3d Cir. 2001); *McCoy v. Southeastern Pa. Transp. Auth.,* No. 01-5881, 2002 WL 376913 at *1 (E.D. Pa. 2002). The motion may only be granted if there are no factual allegations in the pleadings which, if proven, would allow the nonmoving party to recover. *See Oxford Assocs.*, 271 F.3d at 144-45; *McCoy,* 2002 WL 376913 at *1.

**DISCUSSION**

There are seven claims in the present action: 1) misappropriation, 2) unfair competition, 3) conversion, 4) fraud, 5) breach of contract, 6) tortious interference with existing business relations and 7) unjust enrichment. Defendant moved for judgment on the pleadings on the basis that Plaintiffs lack standing, Plaintiffs' claims are preempted by the Copyright Act of 1976, and Plaintiffs cannot assert a claim under the Copyright Act.

**A. Standing**

Defendant contends that it is entitled to judgment on the pleadings because Plaintiffs lack standing. To meet the constitutional threshold for standing, a plaintiff must show an injury in fact, causation fairly traceable to the alleged conduct of the defendant, and a substantial likelihood that the requested relief will remedy the alleged injury in fact. *Vt. Agency of Natural Res. v. United States*, 529 U.S. 765, 771 (2000). Standing is not a mere pleading requirement, but rather an indispensable part of a plaintiff's case, and, therefore, the elements of standing must be supported just as any other matter on which

4

the plaintiff bears the burden of proof. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883-89 (1990)).  Thus, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" as the Court must consider the facts alleged in the light most favorable to the non-moving party.  *Id*.

Defendant argues in its Brief that the Affiliate Newspaper Agreement executed between each newspaper and Legacy.com provides that Legacy.com is the sole owner of all right, title and interest in the death notices, including the right to sue. However, viewing the facts alleged and all inferences drawn from the facts in the light most favorable to Plaintiff, the Plaintiffs have expended time, money and resources in compiling the obituaries, which were subsequently copied by Defendant. Plaintiffs alleged that these activities have caused a loss of customers and sales, damage to Plaintiffs' existing business relations, and a loss of profit and good will. The facts alleged show sufficient injury in fact and causation to meet the first two prongs of the standing inquiry.  Finally, Plaintiffs also seek redress in the form of injunctive relief, money damages, and attorneys fees.  Such relief will sufficiently remedy the injury suffered by Plaintiffs, thereby satisfying the third prong of the inquiry analysis.  At this stage of litigation, Plaintiffs have sufficiently borne their burden of alleging injury in fact, causation and likelihood of relief to have standing to bring this suit. Defendants motion for judgment on the pleadings based on a lack of standing will be denied.

**B.    Preemption**

Defendant also contends that it is entitled to judgment on the pleadings because

all of Plaintiffs' claims are preempted by the Copyright Act.[1] Congress amended the Copyright Act in 1976, eliminating the dual state and federal copyright systems and expressly preempting state copyright laws. 17 U.S.C. § 301(a). Since the 1976 Congressional amendments to the Copyright Act, federal courts have held that several other state law causes of action were preempted by the Copyright Act. In *National Basketball Association v. Motorola, Inc.*, 105 F.3d 841 (2d Cir. 1997), the Second Circuit Court of Appeals addressed a case where the National Basketball Association ("NBA") brought two (2) state law unfair competition claims along with four (4) claims brought pursuant to federal statutes, including one (1) claim of federal copyright infringement, against a manufacturer of pager devices used to broadcast and receive real-time data and statistics for NBA games. In its analysis, the court stated that "basketball games do not fall within the subject matter of federal copyright protection because they do not constitute 'original works of authorship' under 17 U.S.C. § 102(a)." *Id.* at 846. The court noted that "[c]opyrightable material often contains uncopyrightable elements within it, but Section 301 preemption bars state law misappropriation claims with respect to uncopyrightable as well as copyrightable elements." *Id.* at 849. "Under the general scope requirement, Section 301 'preempts only those state law rights that may be abridged by an act which, in and of itself, would infringe one of the exclusive rights' provided by federal copyright law.'" *Id.* at 850 (quoting *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992)). Accordingly, the court stated the appropriate

---

[1] The following portion of the memorandum draws heavily from the Court's previous March 6, 2008 memorandum and order, where the Court engaged in an in-depth discussion of state claim preemption under the Copyright Act. (Doc. 16 ) The text has been modified and amended as appropriate for the questions presented by the motion currently before the Court.

6

"general scope" test:

> But if an "extra element" is "required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie within the general scope of copyright, and there is no preemption."

*Id.* (quoting *Computer Assoc. Int'l*, 982 F.2d at 716).

Courts within this District have employed a similar test adopted by the First Circuit Court of Appeals in *Data Genaral Corporation v. Grumman Systems Support Corporation*, 36 F.3d 1147 (1st Cir. 1994). In Data General, the First Circuit held that 'if a state cause of action requires an extra element, beyond mere copying, preparation of derivative works, performance, distribution or display, then the state cause of action is qualitatively different from, and not subsumed within, a copyright infringement claim and federal law will not preempt the state action.'" *See Daley*, 2006 U.S. Dist. LEXIS 4061, at *6-7 (M.D. Pa. Jan. 19, 2006) (quoting *Data General*, 36 F.3d at 1164). "To determine whether a claim is qualitatively different, we look at what the plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced." *Id.* at *7 (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004)). "Not every extra element is sufficient to establish a qualitative variance between rights protected by federal copyright law and that by state law." *Id.* (quoting *Dun & Bradstreet Software Services., Inc. v. Grace Consulting*, 307 F.3d 197, 218 (3d Cir. 2002)). "Indeed, courts have taken a 'restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim.'" *Id*. (quoting *Briarpatch*, 373 F.3d at 306). This District's Test for preemption turns on whether 1) the subject matter of the claim falls within the

7

subject matter of the Copyright Act and 2) the asserted state law right is "equivalent" to those rights granted in section 106 of the Copyright Act. *Id.* at *5.

The Court had a chance to examine the issue of claim preemption in its opinion on Plaintiffs' motion to remand. *Scranton Times v. Wilkes-Barre Publishing Co*, No. 08-cv-2135 (M.D. Pa. Mar. 6, 2008). The Court will again examine each of Plaintiffs' state law claims below to determine whether these claims contain an extra element that renders them qualitatively different from a copyright infringement claim under the Copyright Act.

**I.     Plaintiffs' Count I Misappropriation Claim**

The Plaintiffs in this case represent that they have based their claims on the Supreme Court's decision in *International News Service v. Associated Press*, 248 U.S. 215 (1918). (Pls.' Br. in Supp. at 1.). In *International News Service*, the plaintiffs accused International News Service of copying and distributing news stories from earlier editions of Associated Press publications. 248 U.S. at 229-31. The Supreme Court held that International News' activities supported a claim for unfair competition but not copyright infringement. *Id*. at 234-35.

However, as noted above, Congress amended the Copyright Act in 1976, preempting many state law claims. After the amendments, federal courts have had several opportunities to examine which state causes of action are preempted by the amended Copyright Act. For example, in *NBA* the Court of Appeals noted that "[c]ourts are generally agreed that some form of [misappropriation] claim survives preemption." *National Basketball Association*, 105 F.3d at 850 (citing *Financial Information, Inc. v.*

8

*Moody's Investors Service, Inc.,* 808 F.2d 204, 208 (2d Cir. 1986), *cert. denied*, 484 U.S. 820, 98 L. Ed. 2d 42, 108 S. Ct. 79 (1987)). After reviewing the *International News Service* case, legislative history, and other interpretive decisions from within the Second Circuit, the court concluded that "only a narrow [*International News Service*] 'hot news' misappropriation claim survives preemption for actions concerning material within the realm of copyright." *Id.* at 852. The *NBA* court further identified the elements central to an *International News Service* claim as

> (i) the plaintiff generates or collects information at some cost or expense; (ii) the value of the information is highly time-sensitive; (iii) the defendant's use of the information constitutes free-riding on the plaintiff's costly efforts to generate or collect it; (iv) the defendant's use of the information is in direct competition with a product or service offered by the plaintiff; (v) the ability of other parties to free-ride on the efforts of the plaintiff would so reduce the incentive to produce the product or service that its existence or quality would be substantially threatened.

*Id.* (citations omitted). After further interpretive analysis of the *International News Service* decision, the Second Circuit Court of Appeals identified the extra elements allowing a misappropriation claim styled upon *International News Service* to survive preemption as "(i) the time-sensitive value of factual information, (ii) the free-riding by a defendant, and (iii) the threat to the very existence of the product or service provided by the plaintiff." *Id*. at 853. Accordingly, this case shares many similarities with the case presented to the Second Circuit Court of Appeals in *National Basketball Association v. Motorola*, where a plaintiff also brought a misappropriation claim largely modeled on the *International News Service* case. This Court agrees with the Second Circuit Court of Appeals' analysis in *NBA*, and now considers Plaintiffs' Count I misappropriation claim (Compl., Doc. ¶¶ 41-46) with respect to the three identified "extra elements" allowing

9

such claims to survive preemption.

First, the obituaries appearing in Plaintiffs' publications convey information about many time-sensitive details, including the time and place of funeral or memorial services. Accordingly, the Court believes that the subject matter of the underlying material clearly satisfies the first "time-sensitive" extra element.

Likewise, the Court believes that the allegations contained in Plaintiffs' Complaint–namely, that Defendant, during a five (5) day period in October 2008, simply copied the death notices found in Plaintiffs' publications into its own newspaper–satisfies the second "free-riding" element. Even though Plaintiffs acknowledge that these obituaries were written and provided to Plaintiffs by local funeral homes, it was due to the Plaintiffs' efforts that these obituaries were collected, formatted, and distributed to the public. Thus, even though Plaintiffs were not responsible for producing the content found in each of these obituaries, Plaintiffs bore all of the costs of collecting and distributing this news-worthy information. If the allegations in Plaintiffs' Complaint are proven accurate, then Defendants enjoyed the benefit of Plaintiffs' labors without bearing any of the costs incurred by Plaintiffs. This is the very definition of free-riding.

The Court, however, finds that the Defendant's alleged copying and re-use of obituaries originally found in Plaintiffs' publications did not pose a threat to the existence of Plaintiffs' publications or the ability of those publications to continue the timely publication of obituaries. Each of the Counts brought in Plaintiffs' Complaint states that the alleged activities of the Defendant have resulted in a loss of customers and newspaper sales while also causing harm to Plaintiffs' existing business relations, profits, and good will. (Compl. ¶ 46.) This statement is accompanied by a prayer for

10

relief requesting damages for Plaintiffs' losses resulting from the alleged activity.  (*Id.*) The Court acknowledges that these statements certainly allege that the Defendant caused Plaintiffs some actual loss during the five (5) day period of alleged plagiarism activity, along with speculative future losses in terms of goodwill, customer loyalty, and business relationships.  The Court does not, however, find that Plaintiffs have alleged that Defendant's activities have threatened the entire existence of their publications or has compromised or provided reduced incentive for Plaintiffs to continue collecting obituaries and printing them for public distribution.  Since the Plaintiffs' Complaint does not allege that Defendant's activities have threatened Plaintiffs' ability to provide the service of collecting and distributing obituaries to Plaintiffs' customers,  the Court finds that Plaintiffs' Count I misappropriation claim does not contain any extra elements from a claim of copyright infringement and the claim is, accordingly, preempted by the Copyright Act. Therefore, Defendant's motion for judgment on the pleadings will be granted with respect to Plaintiff's claim for misappropriation.

**II.     Plaintiffs' Count II Unfair Competition Claim**

Plaintiffs allege that Defendant's conduct of misappropriating Plaintiffs' obituaries and passing them off as its own in order to sell newspapers constitutes unfair competition.  This claim is similar to one of the claims at issue in the *Daley* case discussed above.  Furthermore, as was the case in *Daley*, the Court believes that the Plaintiffs' Complaint mis-characterizes Defendant's behavior as "passing off" rather than the appropriate label of "reverse passing off."  As the *Daley* court noted, '[t]he distinction is critical because unfair competition claims alleging "reverse passing off" are preempted

by the Copyright Act, while claims alleging "passing off" are not. *Daley*, 2006 U.S. Dist. LEXIS 4061, at *8. As the *Daley* court explained,

> Passing off (or palming off, as it is sometimes called) occurs when a producer misrepresents his own goods or services as someone else's. In other words, "passing off" occurs when "A" sells "A's" product under "B's" name. A state law unfair competition claim alleging the tort of "passing off" is not preempted, because it does not entail the assertion of rights equivalent to those protected by federal copyright law.

*Id.* at *9 (citations omitted). In comparison, "a wrongdoer commits the tort of 'reverse passing off' when 'the producer misrepresents someone else's goods or services as his own.' That is, 'A' copies 'B's' work without permission and claims it as 'A's' own.'" *Id.* (quoting *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 n.1 (2003)).

In the current case, the Defendant's alleged conduct is best characterized as "reverse passing off" as Plaintiffs' Complaint alleges that Defendant has copied obituaries contained in Plaintiffs' publications and has distributed these obituaries in Defendant's newspaper as their own work. Thus, the Court finds that, although Plaintiffs do not claim to hold a copyright over the obituaries at issue in this case, the rights that Plaintiffs seek to enforce through their Complaint are identical to those rights found in section 106 of the Copyright Act. *See* 17 U.S.C. § 106 (granting the exclusive right for the owner of a copyright to reproduce and distribute copyrighted works). Thus, mindful of "what the plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced," *Daley*, 2006 U.S. Dist. LEXIS 4061 at *15 (quoting *Briarpatch*, 373 F.3d at 306), the Court finds that the state law cause of action falls within the subject matter of copyright law and is equivalent to many of the exclusive rights conferred by 17 U.S.C. § 106. Accordingly, under the two-part test that

is used by this District, Plaintiffs' unfair competition claim (Count II) is preempted by the Copyright Act because the subject matter of the claim fall within the subject matter of copyright law and the asserted right of reproducing and distributing obituaries is essentially equivalent to the exclusive rights granted in section 106 of the Copyright Act. *See Id.* at *5. Therefore, Defendant's motion for judgment on the pleadings will be granted with respect to Plaintiff's claim of unfair competition.

### III. Plaintiffs' Count III Conversion Claim

In Count III of their Complaint, Plaintiffs bring a claim for conversion, claiming that they owned the fifty (50) obituaries allegedly copied and reproduced by Defendant, and that the Defendant, aware of Plaintiffs' ownership, obtained and used these obituaries for its own financial gain. (Compl. ¶¶ 51-53.) In order to correctly analyze the possible preemption of this claim, the Court must determine if the elements required to prove Plaintiffs' conversion claim exceed the elements required to bring a claim under the Copyright Act.

"Conversion is a tort by which the defendant deprives the plaintiff of his right to a chattel or interferes with the plaintiff's use or possession of a chattel without the plaintiff's consent and without lawful justification." *Pittsburgh Construction Co. V. Griffith*, 834 A.2d 572, 581 (Pa. Super. 2003). "A plaintiff has a cause of action in conversion if he or she had actual or constructive possession of a chattel at the time of the alleged conversion." *Id.* In comparison, an infringement claim under the Copyright Act requires a plaintiff to show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Telephone*

*Service Co., Inc.*, 499 U.S. 340, 361 (1991). Thus, the elements of conversion, notably the "deprivation" requirement, exceed the elements for a claim under the Copyright Act and Plaintiffs' Count III claims are not preempted. Plaintiffs complaint alleges that it owned the obituaries and that Defendants used the obituaries without the authority to do so. Drawing inferences from the facts alleged in the light most favorable to Plaintiffs, Defendant's activities lowered the value of Plaintiffs' property, namely the obituaries, and interfered with their ability to use them. Therefore, Plaintiffs' conversion claim is not preempted and Defendant's motion for judgment on the pleadings for this claim will be denied.

### IV. Plaintiffs' Count IV Fraud Claim

Plaintiffs allege in Count IV of their Complaint that when the Defendants allegedly copied obituaries from Plaintiffs' publications and websites, the Defendants falsely conveyed to the public and to funeral homes in Lackawanna County that certain funeral homes were doing business with the Defendant. (Compl. ¶ 57.)

"[T]o establish common law fraud, a plaintiff must prove: (1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damage to the party defrauded as a proximate result." Colaizzi v. Beck, 895 A.2d 36, 39 (Pa.Super. 2006). These elements are clearly in excess of the elements for claims brought under the Copyright Act, and the Court finds that Plaintiffs' Count IV fraud claim is not preempted in this case. However, viewing the facts and inferences drawn from those facts in the light most favorable to Plaintiffs, the complaint does not sufficiently allege a cause of action for fraud. Nothing in the complaint alleges that the Defendant made any

misrepresentation of fact to the Plaintiffs, nor are there any recognizable claims that Defendant intended to induce Plaintiffs into any action. Furthermore, there are no allegations of reliance by the Plaintiffs on any of Defendant's statements. Therefore, Defendant's motion for judgment on the pleadings for the fraud claim will be granted.

### V. Plaintiffs' Count V Breach of Contract Claim

In Count V of their Complaint, Plaintiffs allege that the Defendant gained access to the purportedly plagiarized obituaries through a website maintained by the Plaintiffs. (Compl. ¶ 63.) According to Plaintiffs the Defendant agreed to abide by certain Terms of Use when accessing Plaintiffs' website and that the alleged plagiarism was a direct violation and unlawful breach of this agreement. (*Id.* ¶¶ 64-66.)

To state a claim for breach of contract, Plaintiffs "must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Hunter v. Sterling Bank*, No. 08-879, 2008 U.S. Dist. LEXIS 93429, at *6 (E.D. Pa. Nov. 14, 2008) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007)). Since these elements may clearly be characterized as "extra elements" that are not necessary for claims brought under the Copyright Act, Plaintiffs' Count V claim for breach of contract is not preempted. Plaintiffs' complaint alleges that there was a contract between Plaintiffs and Defendant in the form of the Terms of Use Agreement displayed on Plaintiffs' web site. Plaintiffs further allege that Defendant violated the terms of this agreement, causing damages to Plaintiffs. When viewed in the light most favorable to Plaintiffs, these allegations sufficiently draw out a cause of action for breach of contract.

Therefore, Plaintiffs' breach of contract claim is not preempted and Defendant's motion for judgment on the pleadings for this claim will be denied.

## VI. Plaintiffs' Count VI Tortious Interference with Existing Business Relations Claim

In Count VI of their Complaint, Plaintiffs allege that the Defendant "acted with the intent of interfering with and disrupting Plaintiffs' business relationships with. . . funeral home directors. . . by misappropriating Plaintiffs' work product, the obituaries, and then publishing them in The Times Leader (Scranton Edition) despite no request to do so by the funeral homes, the families of decedents or The Scranton Times." (Compl. ¶ 70.) As a result, Plaintiffs state that they "have suffered and. . . will continue to suffer injury to [their] business relationships." (*Id.* ¶ 71.) Thus, Plaintiffs, once again, complain that the Defendant has copied and distributed Plaintiffs' work product. As previously detailed in this memorandum's discussion of Plaintiffs' Count II unfair competition claim, *supra*, and as stated by the court in *Daley*, "copying and distributing are exclusive rights of the owner of a copyright under [17 U.S.C. § 106]." *Daley*, 2006 U.S. Dist. LEXIS 4061, at *16. The allegations in Plaintiffs' Complaint essentially state that the Defendants' unauthorized reproduction and distribution of obituaries originally appearing in Plaintiffs' newspaper interferes with the Plaintiffs' ability to enjoy the contractual and business relations benefits arising out of Plaintiffs exclusive distribution of these obituaries. "Such a claim is preempted by federal law." *Id.* at *17-18; *see also* 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyrights § 1.01[B][1][a] ("Insofar as unauthorized reproduction, distribution, performance or display causes the plaintiff to lose the benefits

that would flow from an actual or prospective contract whereby plaintiff would authorize any such acts, the rights created by the tort of contract interference do not appear to differ qualitatively from rights under copyright …."). Therefore, Defendant's motion for judgment on the pleadings will be granted with respect to Plaintiff's claim for tortious interference with existing business relations.

### VII. Plaintiffs' Count VII Unjust Enrichment Claim

Count VII of Plaintiffs' Complaint states that "[a]s a result of the aforementioned conduct of plagiarizing Plaintiffs' obituaries and publishing them in Defendant's newspapers, Defendant has become unjustly enriched at Plaintiffs' expense." (Compl. ¶ 77.) Thus, Plaintiffs, once again, complain that the Defendant has copied and distributed Plaintiffs' work product to the detriment of Plaintiffs, and for the reasons already articulated in this memorandum's discussion of Plaintiffs' Count II unfair competition and Count VI tortious interference claims, the Court finds that this claim is preempted by the Copyright Act. Therefore, Defendant's motion for judgment on the pleadings will be granted with respect to Plaintiff's claim for unjust enrichment.

### C. Copyright Claims

Defendant further argues that it is entitled to judgment on the pleadings because Plaintiffs cannot assert a cause of action under the Copyright Act. However, Plaintiffs' complaint does not even allege a cause of action under the Copyright Act. Not being able to make out a claim for copyright infringement is not fatal to Plaintiffs' suit. As discussed above, Plaintiffs have, thus far, successfully pled causes of action for conversion and breach of contract. The Court need not discuss the merits for causes of

action not alleged in Plaintiffs' complaint and not necessary for them to maintain their lawsuit. Accordingly, Defendant's motion for judgment on the pleadings based on Plaintiffs' inability to assert a claim under the Copyright Act will be denied.

## CONCLUSION

The Court will deny judgment on the pleadings for Defendant on the claims of conversion breach of contract because these claims are not preempted by the Copyright Act and there are factual allegations in the pleadings which, if proven, would allow the nonmoving party to recover. The Court will grant judgment on the pleadings for Defendant on the fraud claim because Plaintiffs have not alleged sufficient facts to assert a claim for fraud. The Court will grant judgment on the pleadings for Defendant on the claims of misappropriation, unfair competition, tortious interference with existing business relations and unjust enrichment because these claims are preempted by the Copyright Act.

An appropriate Order follows.


September 23, 2009　　　　　　　　　　/s/ A. Richard Caputo
Date　　　　　　　　　　　　　　　　　　A. Richard Caputo
　　　　　　　　　　　　　　　　　　　　United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE SCRANTON TIMES, L.P. and THE TIMES PARTNER, LLC, | CIVIL ACTION No. 3:08-cv-2135 |
| Plaintiffs, | (JUDGE CAPUTO) |
| v. | |
| WILKES-BARRE PUBLISHING COMPANY d/b/a/ THE TIMES LEADER, | |
| Defendant. | |

## ORDER

Now, this __23rd__ day of Septmember, 2009, it is **HEREBY ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 10) is **DENIED in part and GRANTED in part:**

    A)    The Motion is **GRANTED** for Defendant on Counts I, II, IV, VI, and VII

    B)    The Motion is otherwise **DENIED**.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge